UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LARRY SUMMERS,                        :
                                      :
            Plaintiff                 :      No. 4:11-CV-00886
                                      :
      vs.                             :      (Judge Kosik)
                                      :
MICHAEL J. ASTRUE,                    :            **FILED**
COMMISSIONER OF SOCIAL                :          **SCRANTON**
SECURITY,                             :
                                      :
            Defendant                 :          JUL 2 4 2012

                        **MEMORANDUM**

                                      PER ___ DEPUTY CLERK

**Background**

        The above-captioned action is one seeking review of a

decision of the Commissioner of Social Security ("Commissioner")

denying Plaintiff Larry Summers's claim for social security

disability insurance benefits.

        Summers protectively filed[1] his application for

disability insurance benefits on February 6, 2009.  Tr. 13, 58, 72

and 117.[2]  The application was initially denied by the Bureau of

Disability Determination on April 6, 2009.[3]  Tr. 60-63.  On May 1,

_____

1.  Protective filing is a term for the first time an individual
contacts the Social Security Administration to file a claim for
benefits.  A protective filing date allows an individual to have
an earlier application date than the date the application is
actually signed.

2.  References to "Tr.__" are to pages of the administrative
record filed by the Defendant as part of his Answer on July 15,
2011.

3.  The Bureau of Disability Determination is an agency of the
state which initially evaluates applications for disability
                                                (continued...)

2009, Summers requested a hearing before an administrative law judge. Tr. 66-68.  After about 11 months had passed, a hearing was held before an administrative law judge on April 9, 2010.  On April 19, 2010, the administrative law judge issued a decision denying Summers's application. Tr. 13-20.  On May 20, 2010, Summers filed a request for review with the Appeals Council and on April 7, 2011, the Appeals Council concluded that there was no basis upon which to grant Summers's request for review. Tr. 1-3 and 8-9.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Summers then filed a complaint in this court on May 11, 2011.  Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on October 17, 2011, when Summers elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  It is undisputed that Summers meets the insured status requirements of

---

3.  (...continued)
insurance benefits on behalf of the Social Security Administration.   Tr. 60.

4.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."   M.D.Pa. Local Rule 83.40.1.

the Social Security Act through December 31, 2012. Tr. 13, 15, 80, 92 and 117.

Summers, who was born in the United States on December 2, 1964,[5] obtained a General Equivalency diploma in 1983. Tr. 37, 50 and 100.   Summers can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 37 and 95.   Summers has past relevant work experience[6] as a telecommunications technician described by a vocational expert as skilled, medium work. Tr. 19 and 50.[7]

---

5.   At the time of the administrative hearing and the administrative law judge's decision, Summers was 45 years of age and considered a "younger individual" whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. § 404.1563(c). The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."   20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

6.   Past relevant employment in the present case means work performed by Summers during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner.   20 C.F.R. §§ 404.1560 and 404.1565.

7.   The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*.   Light work involves lifting no more
> (continued...)

3

Records of the Social Security Administration reveal that Summers had earnings in the years 1981, 1983 through 1985, 1991 through 1993, and 2002 through 2007. Tr. 81.  During the years 2002 through 2007, Summers's annual earnings did not fall below $53,109.58. Id.  Summers's total earnings from 1981 through 2007 were $454,440.45. Id.

Summers claims that he became disabled on October 5, 2008, because of disorders of the back. Tr. 96. Summers alleges that he cannot sit or stand for prolonged periods of time and that

---

7.   (...continued)
than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work*.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 404.1567.

4

he is in constant pain. Id.  Summers has not worked since October 5, 2008, the date he was laid off from his job as a telecommunications worker. Id.  After being laid off, Summers applied for and received unemployment compensation up until just prior to the administrative hearing. Tr. 42.  At the administrative hearing Summers admitted that when he applied for unemployment compensation benefits he certified that he was ready, willing and able to work. Id.  Summers denied having any mental impairments which limit his ability to engage in gainful employment. Tr. 42.

For the reasons set forth below we will affirm the decision of the Commissioner denying Summers's application for disability insurance benefits.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34,

38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported
by substantial evidence, we are bound by those findings, even if
we would have decided the factual inquiry differently."); Cotter
v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by
the Secretary must be accepted as conclusive by a reviewing court
if supported by substantial evidence."); Keefe v. Shalala, 71
F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176
(4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529
n.11 (11th Cir. 1990).

        Substantial evidence "does not mean a large or
considerable amount of evidence, but 'rather such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565
(1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197,
229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d
198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360
(3d Cir. 1999). Substantial evidence has been described as more
than a mere scintilla of evidence but less than a preponderance.
Brown, 845 F.2d at 1213. In an adequately developed factual
record substantial evidence may be "something less than the weight
of the evidence, and the possibility of drawing two inconsistent
conclusions from the evidence does not prevent an administrative
agency's finding from being supported by substantial evidence."
Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

7

> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work.  For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in significant
> numbers either in the region where such individual
> lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims.  See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[8] (2) has an impairment that is severe or a combination of impairments that is severe,[9] (3) has an impairment or

---

8.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

9.   The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404.1523 and 404.1545(a)(2).  An impairment significantly limits a claimant's physical or mental abilities when its effect
(continued...)

combination of impairments that meets or equals the requirements

of a listed impairment,[10] (4) has the residual functional capacity

to return to his or her past work and (5) if not, whether he or

she can perform other work in the national economy. Id.  As part

of step four the administrative law judge must determine the

claimant's residual functional capacity. Id.[11]

Residual functional capacity is the individual's maximum

remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis.  See Social

Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A

9.   (...continued)
on the claimant to perform basic work activities is more than
slight or minimal. Basic work activities include the ability to
walk, stand, sit, lift, carry, push, pull, reach, climb, crawl,
and handle. 20 C.F.R. § 404.1545(b).  An individual's basic
mental or non-exertional abilities include the ability to
understand, carry out and remember simple instructions, and
respond appropriately to supervision, coworkers and work
pressures. 20 C.F.R. § 1545(c).

10.  If the claimant has an impairment or combination of
impairments that meets or equals a listed impairment, the
claimant is disabled. If the claimant does not have an impairment
or combination of impairments that meets or equals a listed
impairment, the sequential evaluation process proceeds to the
next step. 20 C.F.R. § 404.1525 explains that the listing of
impairments "describes for each of the major body systems
impairments that [are] consider[ed] to be severe enough to
prevent an individual from doing any gainful activity, regardless
of his or her age, education, or work experience."  Section
404.1525 also explains that if an impairment does not meet or
medically equal the criteria of a listing an applicant for
benefits may still be found disabled at a later step in the
sequential evaluation process.

11.  If the claimant has the residual functional capacity to do
his or her past relevant work, the claimant is not disabled.

regular and continuing basis contemplates full-time employment and
is defined as eight hours a day, five days per week or other
similar schedule. The residual functional capacity assessment must
include a discussion of the individual's abilities. Id; 20 C.F.R.
§ 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional
capacity' is defined as that which an individual is still able to
do despite the limitations caused by his or her impairment(s).").

**Discussion**

The administrative law judge went through each step of
the sequential evaluation process and found, inter alia, that
Summers had the residual functional capacity to perform several
sedentary jobs identified by a vocational expert.  Specifically,
the administrative law judge found that Summers could engage in
work as a bench assembler, surveillance systems monitor and a desk
guard, and that there were a significant number of such jobs in
the regional economy. Tr. 20.  In so finding the administrative
law judge relied on the opinions of three physicians, including
Summers's primary care physician, Beth Cohen, M.D.

The administrative record in this case which primarily
consists of vocational and medical records is 191 pages in length
and we have thoroughly reviewed that record.  The administrative
law judge did an adequate job of reviewing Summers's vocational
history and medical records in his decision. Tr. 13-20.
Furthermore, the brief submitted by the Commissioner sufficiently

reviews the medical and vocational evidence in this case. Doc. 10,
Defendant's Brief.

Summers's only argument is that the case should be
remanded for further proceedings because the administrative law
judge did not adequately develop the record.  More specifically,
Summers contends that there were treatment notes from Dr. Cohen
which his attorney attempted to submit but did not become part of
the record and were not considered by the administrative law
judge.  Summers's argument is devoid of any merit whatsoever.

First, we will note that the record contain substantial
evidence supporting the administrative law judge's decision.  Dr.
Cohen determined on March 10, 2010, that Summers could frequently
lift 10 pounds, stand and/or walk 2 hours in an 8-hour workday,
sit about 6 hours in an 8-hour workday, and had the ability to
push and pull the amounts that he could carry and lift. Tr. 170.
Dr. Cohen further found that Summers could occasionally balance,
stoop, kneel, crouch, and crawl; Summers had no manipulative,
visual or communicative limitations; and Summers only needed to
avoid concentrated exposure to extreme cold and avoid moderate
exposure to vibrations and hazards. Tr. 171-173.  This functional
assessment was incorporated into the hypothetical question asked
by the administrative law judge of the vocational expert. Tr. 51.

Based on that question, the vocational expert identified the jobs
of bench assembler, surveillance systems monitor and desk guard.

The residual functional capacity assessment set by the
administrative law judge is supported by a statement of
Sethuraman Muthiah, M.D., who examined Summers on or about March
17, 2009. Tr. 151-152.  Dr. Muthiah's examination of Summers
revealed that Summers had normal station and gait; Summers did not
need an assistive device to ambulate; Summers had normal muscle
strength in his bilateral upper and lower extremities; and Summers
had no manipulative limitations.  Id.  The administrative law
judge's residual functional capacity assessment is also supported
by the opinion of Anne C. Zaydon, M.D., who reviewed Summers's
medical records on behalf of the Bureau of Disability
Determination and concluded that Summers had the residual
functional capacity to engage in a limited range of medium work.
Tr. 161-167.

The record reviewed by the administrative law judge
contained medical treatment notes from Dr. Cohen covering the
period June 25, 2008 to February 3, 2009 and the functional
assessment by Dr. Cohen dated March 6, 2010.  Tr. 127-130, 135-137
and 170-176.  These records were admitted into evidence at the
time of the administrative hearing.

12

On April 26, 2010, after the administrative law judge
rendered his decision counsel for Summers sent several items to
the Appeals Council. Tr. 177-191.  The vast majority of those
items had already been made part of the record.  The only item not
reviewed by the administrative law judge was a progress/treatment
note from Dr. Cohen dated March 10, 2010. Tr. 178.  That note
primarily contains the subjective complaints of Summers. Id.  The
only objective findings by Dr. Cohen were as follows: "On
examination, his gait is antalgic and he is very tender to
palpation in the mid to lower lumbosacral spine and he is in a
moderate degree of spasm." Id.   Dr. Cohen did not indicate in
this progress/treatment note that he was no longer of the opinion
that Summers could engage in sedentary work as expressed in her
functional assessment of March 6, 2010. Id.  Dr. Cohen merely
indicated that Summers could not engage in his prior relevant work
which as stated earlier was skilled, medium work.
The administrative law judge's decision which limited Summers to
the sedentary jobs of bench assembler, surveillance systems
monitor and desk guard is clearly consistent with Dr. Cohen's
progress/treatment note of March 10, 2010.  The fact that the
administrative law judge did not review that treatment note is
immaterial and under the circumstances presented not a basis to
remand for further administrative proceedings.

13

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.